Good morning. May it please the Court, I'm James Laughlin, and I'm here on behalf of Mr. Vermaak for the Court's mission. I'd like to reserve the floor to Mr. Laughlin. I'll try and help you, Mr. Laughlin. Thank you very much. The first issue in this case concerns this Court's decision in Burgum, where it held that... Could you keep your voice up, would you, please, Counsel? Oh, I'm sorry.  The first issue in this case involves the Court's decision in Burgum, which held that a sentencing court cannot consider as an aggravated sentencing factor a defendant's inability to pay restitution. One of the cases on which Burgum relied was the Supreme Court's decision in Bearden. Bearden recognized that there's a, quote, delicate balancing required between the principle that a sentencing court takes into account all relevant sentencing factors and the constitutional prohibitation against using a defendant's lack of financial resources against him. But in Burgum, we had the situation of armed robbery of some banks, and the poverty of Mr. Burgum was not affecting the poverty of the banks as a result of this armed robbery. Here we have a different situation, don't we? Burgum... I mean, in Burgum, there was no issue as to whether the banks were going on the rocks because of Burgum's bank robberies. So it was plain use of poverty for poverty. Here we have a situation of the poverty affecting the victims. Isn't that different? It is a different factual... It's Rangel. It's not Burgum. Correct, Your Honor. It's a different factual situation, but the same principle applies. Rangel, as Your Honor pointed out, did deal with a situation involving fraud, and yet they still applied the Burgum rule. And I think I wanted to talk about... I'm sorry. But they found no violation. So how is this case different from... I was saying Rangel, but maybe it's Rangel. Oh, I'll say Rangel. I don't know. I think it's different for a couple of reasons, and I'd like to start by explaining what I think the holding of Rangel is because I think it's important because I think Rangel demonstrates this delicate balancing that the Supreme Court engaged in in Burgum. And what Rangel said was its original decision said that the court could properly consider the defendant's inability to pay and the unmitigated effect on the victims. And didn't we have testimony here from victims who were present in the courtroom who were the victims of the fraud? Yes, there were four victims stated. Okay, so Judge Carney had heard during the sentencing hearing from the people who were most severely impacted by your client's activities the hurt that he had inflicted upon them.  And don't the Section 3553A factors require the district court to take into consideration in fashioning an appropriate sentence the impact on the victims of the defendant's criminal activity? It does, Your Honor, and I think that's exactly the holding of Rangel. When the court denied Rangel's petition for a hearing on Bonk, it amended its decision. And the key thing it did was it removed references to the defendant's inability to pay and it removed the words unmitigated impact on the victims. Well, let me ask the question a different way. Does your appeal really rise or fall on semantics? In other words, is your criticism that the sentencing judge should have more carefully phrased what he said to make clear that he was influenced by what he had heard from the people who were most affected by what Mr. Burmak had done? And are you faulting him for not saying, I want to be sure I'm clear on the record here, I'm not increasing Mr. Burmak's sentence because he will never be able to repay the $3.5 million. I'm increasing his sentence because he's hurt all these elderly people who have been built of their life saving. If we had that hypothetical, would you even be here? I think we still would with this particular judge, Your Honor. And I don't think this is about semantics because I think what's always at issue is what the court did, what its real reasons were, and its statements are the best evidence of that. But as Judge Beah pointed out in Rangel, or was it Burgum, I can't remember, which is the bank robbery. I mean, it's not like you've got the bank president there crying about the money that the robbers stole from him. Here you've got a courtroom with the people who have been invited to come to the sentencing to tell the judge in their own words what impact the defendant's conduct had on them. And if the court is influenced by that, are we going to reverse him because he didn't intone specific words? Or can we look at the record and see what was before the sentencing court, notwithstanding the words he used, and say it was perfectly appropriate to increase the sentence based on the evidence that he heard at the sentencing here? Well, Your Honor, I disagree that this court can say that, well, because we can look at this evidence and say that a reasonable judge could decide to do the same variance based on proper considerations, therefore we kind of uphold it. What's at issue is what Judge Carney did. But it is a proper consideration, is it not? Correct. To fashion the sentence based on victim impact. It is, Your Honor, and I think that's the key holding of Rangel. It's proper to consider the impact on the victims. It's improper to consider the unmitigated impact on the victims because that implies the defendant's lack of ability to pay restitution. But if the fact of the matter is that the fraud was so large, $3.5 million, that unless Mr. Verback is heir to a fortune, he's never – no person in that position is going to be able to make restitution. What's wrong with the court observing these people are out the money and they're never going to get it back? Well, Your Honor, I think that the problem is with this particular judge, we have a pattern that shows from the Nathanson and Nichols decisions that he actually disagrees with Burkham. He thinks that inability to pay restitution – Don't we have to decide this case based on what he did in this case? How can we look at those other cases to say that there's a pattern here and then do something in this case as a result of that? Well, I don't think the court should ignore things that are clearly part of judicially noticeable facts in other cases. He said in a decision he chose to have published in the FSUPs and in another order, he's saying expressly, I believe that inability to pay restitution can be considered as an aggravating factor, which is directly contrary to Burkham. In fact, he says – But Rangel – Rangel – do you disagree with Rangel? I mean there's not that much left of Burkham after Rangel as I understand it. So I can't tell if you really disagree with Rangel or if you're – No, I don't – obviously I can't disagree with Rangel just as Rangel couldn't disagree and overrule the Burkham court. But as I explained, what I think it did was it tried to do that delicate balancing the Supreme Court talked about by creating a rule saying you can consider the impact on the victims, you can consider the unmitigating impact on the victims. I'm running out of time and I would like to briefly talk about the second issue if I could. Use your time any way you want. Okay. I do think this is a case where regardless of the first issue, we have a case here where the judge increased the sentence dramatically over the advisory range and more than doubled the 41-month sentence that was jointly recommended by the probation office, the government, and the defense without really explaining why he did that. He gave reasons to be sure, but as the case law cited in the briefs establish, when you have a great variance from the guideline, which in this case amounts to either five or seven levels or an increase of 65 to 105 percent, depending on whether you look at the low end or the high end of the range, that's a big jump. So is your argument that he didn't say enough? I mean I read a transcript that permits me as a reviewing court to sort of get into the head of the district judge and understand why he thought this was – this warranted a longer sentence. What's missing? What more should he have said? What's missing is, first of all, the quantification of why. First of all, he never connected his final sentence to the guideline range. He calculated it and came up with the range, but he never said. And the cases that were cited in the briefs say the higher the variance, the more significant the justification. But none of those cases actually reversed a sentence for failing to do that, did they? I don't believe so, but that does not mean that Judge Carney shouldn't have given more in this case. And I think that the key fact is – What more should he have said? Well, in particular, Your Honor, what he said – his aggravating factor was the – what he said is what's not captured by the guidelines is the harm to the victims. And then he said the second aggravating factor was the multimillion-dollar loss. Of course, the 18-level loss enhancement was taken into account in the guidelines. It was by far the biggest factor in calculating the guideline range. And it doesn't mean that he has to be tied to that range, but when he says that I'm considering the loss to the victims as the primary aggravating factor, when that's the primary factor in the guideline range, he needs to explain why it wasn't sufficient under these facts and circumstances, particularly given that the unanimous decision about – the unanimous opinion about everybody else involved in the case was that a 41-1 sentence was sufficient but not greater than necessary to serve all the senses. Your argument essentially wants to convert an advisory guideline range back into a mandatory range. Oh, not at all, Your Honor. When we tried to understand our in-bank decision in Cardi, what we said was if the district court is going to depart or vary from the guideline range, the judge needs to say enough to permit the reviewing court to understand why the court ended up where it did. Isn't that the test? It is, and I don't think that's met here. Because I'm certainly not advocating for a mandatory guideline system, but it has – I'm not saying he couldn't have gone up. He has to explain why and quantify why that thing would jump back. I'll give you a minute on rebuttal. I think we understand your position. Let's hear from the government. Good morning. May it please the Court, Jennifer Ware on behalf of the United States of America. Defendant raises three issues in his brief, and all of them are without merit. First, there is no Bergen violation. The Court here did not commit obvious error. In fact, it followed the holding in Rangel. Here we had victims, and as part of 3553A, the Court must look to the seriousness of the offense. In a fraud case, in order to assess the seriousness of the offense, you have to look at the victim loss. And here, the probation officer stated that the victim loss was pretty extraordinary. You had four people come into the Court as they were invited to do, as Congress tells them they have the right to do, and they told the Court how they lost their retirement, their savings, their psychological well-being, and their homes. Judge Carney properly took that into account in fashioning a sentence. These victims wanted justice, and Judge Carney delivered it. Would Bergen ever apply when there are individual victims? Absolutely. And I'll tell you how that would happen. If the judge started to bring up the socioeconomic status of the defendant, if the judge said, this defendant is impoverished, he can't even pay a fine, I feel that because he does not have any money and does not focus at all on the victims, that, yes, would be a violation of Bergen. And I think Judge Carney didn't like the fact that he was being portrayed as somebody who was unfairly targeting people that are in debt, and that's not what he was doing. And I think that's an unfair characterization of what Judge Carney was doing here. The victim impact statements are powerful. They are something that really does sway a district court, and it would sway anybody because it's not just a financial loss. That plus 18 does not capture what those victims have lost. Yes, money can be repaid, but people cannot be made whole when they lose their retirement and their psychological well-being. As a fraud prosecutor, that's what I need to do to tell the court, this is what you've done to these citizens of the United States, and that is exactly what Judge Carney has taken to an account and should take into account when doing this kind of sentencing, and that's exactly what Rangel dictates. So there is no Bergen violation on this record. In fact, if you even look at what Judge Carney said, he said the most troubling and upsetting factor was the irreparable harm caused to the victim. He doesn't say the socioeconomic status of the defendant, and that's where the rug is between Bergen and Rangel, and that's how the two can coincide. And I think that's exactly what Judge Carney is doing, and the fact that Nathanson and Nichols and Vermont are all cases that dictate that kind of scrutiny, and that's exactly what Judge Carney should be looking at. So based on that— Do you disagree with your opponent, though, that Judge Carney seems to disagree with Bergen? Yes, I absolutely do. And I think that because nobody has objected, he has plain error review, so he hasn't had a chance to explain himself. And when he did explain himself in the Nathanson opinion, he wanted to make clear that, look, I am not the judge that is going to be discriminating based on poverty. I am not that judge, and I'm going to look only at what is permissible. I know what the rule is, and that's what he's saying, and I'm going to follow it. And that's exactly what he did. Playing word games, that's something that you can do, but let's look at the substance and the force of what Judge Carney is doing. And in this case, the substance and force was giving the victims a voice and fashioning a sentence that he felt was reasonable and just, and that's exactly what he did here, and the record bears that out. And it permits meaningful review of the sentence. He explicitly describes why he picked the upward variance, and it was based on the financial impact of the victims' harm and suffering, and that's exactly what he focused on, and also of the three-year scheme. I mean, this is a man that took over $3.5 million. He could have kept that money and done good with it. He had that money, but no, instead, he had a Ponzi scheme, and he squandered it. He lived in a nice house. And on top of that, he had an arsenal of firearms, and the victims said that they were scared because as he was in jail, he was moving firearms. So he got a second offense, which the guidelines did not take into effect because they were grouped. So this was a very interesting case. But I thought he sentenced him concurrently on the firearm count. He did on the 18th. He gave 18 months. I mean, other than the fact that it's not good for illegal aliens to have firearms and it's a crime, that obviously didn't drive the 84-month sentence if he ordered a concurrent sentence. No, but it actually impacted the victims. And one of the victims stated that he was scared in the fact that this person had firearms. So that was part of more of the victim impact that was also playing into the sentencing in terms of how that would play in. The sentence the judge imposed was more than double what the government requested. Why was it reasonable despite that? Again, because Judge Carney noted that the victim impact was extraordinary, and so did the probation officer. In fact, the probation officer said actually that he believed it was a more serious offense than they had originally thought when they'd done the pre-sentence report based on the victims. And Judge Carney felt that based on the victim impact statements and the nature of the offense, he felt an 84-month sentence was reasonable. Minds can differ. I mean, the judges don't always agree with me, but that doesn't mean it's not a reasonable sentence. And here, Judge Carney gave his reasons. We don't have to guess as to why he picked that 84-month sentence, and that's all he has to do. He followed the 355A factors, he determined the applicable guideline range, he made a variance, and he told you why. So is there any limit to how high the sentence could have been? Well, absolutely. There's always limits. And that's why here he did say he didn't go up. He went up 33 months of the high end. What the max is, what, 20 years on this offense? Exactly. And he could have run the sentences consecutively. He could have run the sentences consecutively. Counsel, I'm bothered by one thing. In the sentencing calculation, there was a sentencing guideline, I can't remember exactly the number, that deals with where the fraud has caused substantial financial loss or imperils the solvency of victims. And you didn't ask for that. Now, I wonder why that, why you didn't ask for that rather than bring in the victim's statements. I'm misunderstanding your question. Never mind. Okay. So based on the fact that the judge did not commit Burgum error and described his sentence with particularity, the government believes that this court should affirm the sentence, unless there's any other questions. Anything else? I have nothing further. Thank you, Your Honor. Mr. Laughlin will give you the final word. Thank you. With regard to the government's claim that Judge Carney has not expressed his belief that Burgum is wrong, I'd ask the court to compare the Burgum decision that says, we conclude the district court erred by treating Burgum's inability to pay as an aggravating factor with footnote 9 of Nathanson, where Judge Carney says Mr. Burgum's inability to pay was still an aggravating factor the court needed to consider. So it really does come down to semantics. In other words, the words that he chose as opposed to the record that was before him? No. What I'm saying is it never comes down to the words spoken. It's what the judge did. It's whether the judge considered an improper factor. And I think the evidence in Nathanson and Nichols shows that because he doesn't believe this rule should apply, he doesn't follow it. Well, is it that or is it I've just heard the heartfelt testimony of members of the community who have been, you know, really seriously hurt and I'm moved by what I've heard and I'm going to give you a longer sentence because of those impacts. If he'd said that, then. If he meant that. Well, but, I mean, can't we tell from looking at the record that was before him? I don't think so. Both given the words he used in this case and given his pattern in now four cases where he's clearly hinting. So his citations to, I'm looking at SER 154, starting at line 9, some of these victims, as we have heard, are senior citizens. They've lost their retirement, their savings. Some of the money was used for college education. Some was used for their mortgage that they needed to pay their mortgage, and they've lost their homes. This is truly tragic. And one of the least favorite aspects of my job is having to see suffering from people, good citizens. What more does the district court need to say in order to permit us to determine that he was obviously affected by what the evidence that was before him? Well, Your Honor, I think that the issue is with the paragraph that precedes that where he's saying it's the fact that their harms are irreparable, that their suffering will not be alleviated, their money will not be restored. Right. There's nothing that I can do, unfortunately, to return their money or alleviate their pain and suffering that Mr. Vermack inflicted on them. And how do you want me to read that sentence? As a violation of the Rangel rule, which states you can consider the impact on the victim but not the unmitigated impact. So the fact that the victims have lost their money and they're never going to get it back is an impermissible factor. That somehow translates into him giving you a longer prison sentence because you're indigent and you can't pay the money back? Is that what you're asking? No, Your Honor. What I'm saying is this happens a lot with what courts have to do with it. You used a couple of words. I've written that down here. He should consider the impact on the victims but not the unmitigated impact. How can he consider the impact on the victim without considering that they are unmitigated by restitution? If there was Bernie Madoff and the recovery of billions of dollars, there wouldn't be the same impact on the victim, would there? That's true, but what do you mean by saying you can consider the impact on the victim but not the unmitigated? Am I quoting you correctly? Yes, because I believe that's what Rangel did. How can you consider the impact without considering whether the impact has been mitigated? I admit that it's a fine line, but it's one that's important. It's an impossible line, isn't it? I disagree that it's an impossible line because I think what it does is it forces a sentencing judge to think in terms of keeping the focus on the victim and not on the defendant's ability to pay. But how can you focus on the victim if the victim has lost $100,000 and the defendant has millions which are available to pay back to the victim? The victim hasn't been hurt all that much, but if the defendant doesn't have any money, the victim has been hurt. I don't understand your formulation. What is an unmitigated impact? Well, Your Honor, I think that in that situation that Your Honor described, there is a real danger that the wealthy defendant will be treated better than the indigent defendant. And what this delicate balancing requires a sentencing judge to do is to make clear that it's not considering the inability of the defendant to pay the victim's back while yet still considering the long-term impact that the crime. But in Rangel, the defendant couldn't pay the victim's back, and that's what the court knew. So where in Rangel are you getting this idea that there's a difference between mitigated and unmitigated? Well, Your Honor, if Your Honor looks at the order that's at the beginning of the opinion where it amended the decision in responding to the petition we're hearing on Bonn, which alleged that the decision conflicted with Burgum, it subtracted, it excised all the references to unmitigated impact on the victims. So to me, that suggests that the court realizes that to the extent that the decision said unmitigated impact on the victims, that conflicts with Burgum. But they left the sentence that talks about his inability to – so Rangel argues that the district court erred in considering his inability to pay restitution. So that's still there. Right, and that goes to the particular facts of Burgum where it appears that there was a relatively innocuous comment in the context of perhaps reciting the 3553A factors and that it wasn't the kind of statement we have here. So that's what gave the grounds for the objection, but the court looked at the totality of the circumstances there for a judge who was not Judge Carney who has this pattern and concluded that given the totality that there was no error. Okay, thank you very much. The case just argued is submitted.
judges: Tallman, Bea, Owens, Friedland